UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| **HEATHER ANN YATES,** } | |
| } | |
| **Plaintiff** } | |
| } | |
| v. } | |
| } | Case No.: **4:15-CV-2234-RDP** |
| **CAROLYN W.COLVIN, Acting** } | |
| **Commissioner of Social Security** } | |
| } | |
| **Defendant** } | |

**MEMORANDUM OF DECISION**

Plaintiff Heather Ann Yates brings this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her claims for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI").  *See* 42 U.S.C. §§ 405(g) and 1383(c).  Based on the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

**I.     Proceedings Below**

Plaintiff filed her application for DIB and SSI on June 7, 2012 in which she alleged that disability began on April 1, 2009.  (Tr. 173-77).  She later moved to amend her alleged onset date to October 9, 2009.  (Tr. 197).  On October 2, 2012, the Social Security Administration found Plaintiff was not disabled and denied her claim.  (Tr. 77).  Plaintiff requested a hearing before an Administrative Law Judge. (Tr. 108).  Her request was granted on November 30, 2012. (Tr. 110).  Administrative Law Judge Renita Barnet-Jefferson conducted a hearing.  (Tr. 117-22). In her decision, dated May 2, 2014, the ALJ determined that Yates had not been under a

disability within the meaning of sections 216(i), 223 (d) or 1614(a)(3)(A) of the Social Security Act since April 1, 2009. (Tr. 63). On May 13, 2014, Plaintiff requested review from the Appeals Council but her request was denied. (Tr. 30, 48). That denial rendered the Commissioner's decision final, and therefore, a proper subject of this court's appellate review.

**II.    Facts**

Plaintiff was twenty-eight years old at the time of her ALJ hearing. (Tr. 6). She alleges she is disabled because of the following impairments: depression, vision loss, back pain, and cysts. (Tr. 68). She is a single parent of three children. (Tr. 6). Plaintiff has worked various jobs throughout her life, including a material handler, stocker, hostess, fast food cashier, and janitor. (Tr. 9-13). She is able to drive, but has family or friends drive her around because she suffers from blackouts and is afraid to drive. (Tr. 7).

Plaintiff testified that she has a cyst on her brain and she is currently under the care of a neurologist for this condition. (Tr. 13). She is currently taking medication for the cyst, but her doctors are looking into surgery. (*Id.*). She would like to see a neurologist in Birmingham about this condition, but she has not had any transportation to travel there. (Tr. 14). At the hearing, Plaintiff also claimed she suffers from a bulging disc in her back that causes pain in her left hip down to her leg and it is difficult for her to sit or stand for long periods of time. (Tr. 14-15).

Plaintiff reports getting headaches two to three times a week and says they last for three to four hours. (Tr. 15). She takes medications (Gabapentin and Tramdol) for her headaches, but the medication makes her sleepy and she has to take a nap. (Tr. 16). Plaintiff rates the pain from her headaches as an eight and the pain from her back between six and seven out of ten. (Tr. 19). In addition, she suffers from anxiety attacks once or twice a week which she says are easily

triggered. (Tr. 18). She has been to the emergency room for both headaches and the anxiety attacks. (Tr. 18-19).

During the day, Plaintiff takes care of her youngest child and gets her middle child ready for daycare. (Tr. 20). She does basic chores, such as washing dishes, and has a neighbor who comes over to help with chores she cannot do. (Tr. 19). She goes to the grocery store with a friend or family member who provides transportation and she goes to church two or three times a month. (Tr. 21).

Plaintiff was diagnosed with a porencephalic cyst on her brain based on a CT scan conducted at Gadsden Regional Medical Center on September 10, 2005. (Tr. 362). Her primary care group is Quality of Life Health Care. (Tr. 19). She first visited Quality of Life in December 2005 and her chief complaints were severe headaches and blackouts every few days. (Tr. 292-94). She continued to see doctors at Quality of Life during the relevant time period of October 2009 through May 2014. (Tr. 313-56). Her first visit (after her alleged onset date) was on November 30, 2009 (Tr. 313). Her complaints at that time were anxiety and back pain caused by a fall at work. (*Id.*). She was prescribed Voltaren, Ultram, and Flexeril for her back pain, and Hydroxyzine for her anxiety attacks. (Tr. 315).

Plaintiff did not return to Quality of Life until August 1, 2011. (Tr. 316). At that time, her chief complaint was depression and cold symptoms. (*Id.*). She was diagnosed with acute sinusitis and depression, and given medication for both conditions. (Tr. 318). Plaintiff was treated at Quality of Life four more times in 2011. (Tr. 320-30). Each time, her main complaint was depression and occasional knee and back pain. (*Id.*). She was given a variety of different medications to treat her depression during this time period. (*Id.*). She continued to visit Quality

3

of Life throughout 2012. (Tr. 331-53, 490-502). She also had an MRI in February 2012 that showed a 4cm arachnoid cyst. (Tr. 336).

On May 15, 2012, Plaintiff was treated at Quality of Life for depression and arthalgias (aching and dull pain in her hip that was aggravated by bending and moving). (Tr. 347). She was advised to take Arthritis Strength Tylenol along with Tramadol and to use ice/heat packs for the pain. (Tr. 350). On July 19, 2012, she went to Quality of Life complaining of headaches and depression. (Tr. 492). She was not suffering from blurred vision, phonophobia, or photophobia. (Tr. 493). She was diagnosed with both chronic headaches and depression, and prescribed medications for both. (Tr. 494). From July 2012 through October 2013, she continued to seek treatment from Quality of Life for migraines, chronic headaches, chronic depression, and anxiety. (Tr. 496-515). Most of her treatment throughout this period consisted of a variety of medications for both pain and psychological issues. (*Id.*). On January 16, 2014, Plaintiff's treating physician at Quality of Life, Dr. Towles-Moore, filled out a physical capacities form stating that Plaintiff can sit for an hour at a time, stand or walk for less than thirty minutes at a time, would need to be lying down for three hours in an eight-hour work day, maintain concentration for three to four hours, perform a task for two hours at a time, and her condition would last for at least twelve months. (Tr. 688).

Plaintiff was also treated at the Gadsden Regional Medical Center Emergency Room numerous times during the relevant time period between her alleged onset date and the ALJ decision. (Tr. 371-484). Her first admission to the ER that is relevant here was on November 12, 2009 and related to a panic attack. (Tr. 466). She was diagnosed with acute anxiety, acute depression, and chronic back pain and prescribed Ketorolac and Clonazepam. (Tr. 469). On November 13, 2009, she visited the ER again for back pain. (Tr. 458). On May 17, 2011, she

presented to the ER complaining of a headache. (Tr. 446). She was diagnosed with an acute non-specific headache and a urinary tract infection. (Tr. 449). She was prescribed Lortab and Ibuprofen for the headache and medication for the infection. (*Id.*). In the first six months of 2012, she visited the emergency room at Gadsden Regional on five occasions complaining of headaches. (Tr. 366-97). Each time, she was given pain medication, such as Lortab or acetaminophen, and discharged. (*Id.*). On a few occasions, her headaches were accompanied by nausea/vomiting and photophobia. (Tr. 371-91).

In 2013 and 2014, Plaintiff was treated at Neurological Specialists, P.C. (Tr. 37-39, 683-89). Her first visit was on August 15, 2013 and she complained of chronic light sensitivity, nausea, vomiting, and headaches. (Tr. 683). She was diagnosed with cerebral cysts, common migraine, and Bipolar I Disorder. (Tr. 684-85). On January 14, 2014, she had a follow-up visit with Dr. Olga Bogdanova, reporting that the headaches had led to depression and crying episodes. (Tr. 689). She also reported her medication was causing nausea and she was sleeping poorly. (*Id.*). Dr. Bogdanova diagnosed her with chronic intractable headaches, persistent anxiety, and depression symptoms. (*Id.*). Plaintiff visited Dr. Bogdanova a second time in October 14, 2014, after the ALJ decision. (Tr. 37-39). Again, Plaintiff complained of headaches and indicated they had been worsening for two weeks. (Tr. 38). She worried the cyst was growing, and complained of poor sleep and uncontrolled depression symptoms. (*Id.*). Dr. Bogdanova diagnosed her with common migraines, Bipolar I Disorder, cerebral cysts, and insomnia. (Tr. 39).

On August 25, 2012, Plaintiff was examined by a consultative examiner, Dr. Jack Bentley. (Tr. 486-89). Dr. Bentley diagnosed her with depressive disorder, chronic anxiety, probable borderline intellectual functioning, cysts on brain, migraine headaches, and chronic low

back pain. (Tr. 488). He found that her mood was "moderately dysphoric and her affect was restricted." (Tr. 487). Dr. Bentley estimated that her cognitive functioning fell within the "upper end of the borderline range to low average range," and determined that she would be able to handle funds on her own if they were awarded. (*Id.*). He also opined that she appears to experience "little impairment in her ability to perform simple tasks of a non-stressful manner." (Tr. 488-89). In addition, he said there should "be little impairment in her ability to communicate effectively with fellow co-workers and supervisors." (Tr. 489).

### III.   ALJ Decision

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). Absent such impairment, the claimant may not claim disability. *Id.* Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ

must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite her impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. *Id.* If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v). In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

Here, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since April 1, 2009.[1] (Tr. 55). Although she had worked since that date, Plaintiff had not earned enough money for it to be considered substantial gainful activity. (*Id.*). She found that plaintiff did suffer from a variety of severe impairments, including "mild lumbar disc bulging, a cerebral cyst, headaches, a depressive disorder with anxiety, and borderline intellectual functioning." (*Id.*). The ALJ held that none of Plaintiff's severe impairments met any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 56). Her physical impairments did not meet the criteria for the spinal disorder listings or neurological impairments. (*Id.*). In addition, her mental impairments were also not sufficiently severe as she does not have any "marked restriction of activities in daily living" or "marked difficulties in maintaining social functioning

---

[1] The ALJ incorrectly stated Plaintiff's alleged onset date as April 1, 2009. (Tr. 55). This is the date Plaintiff initially alleged in her application for DIB and SSI (Tr. 173-77), but she later amended her application to allege an onset date of October 9, 2009 (Tr. 197).

[or] concentration, persistence, or pace" or repeated episodes of decompensation. (*Id.*). After careful consideration, the ALJ found that Plaintiff had the following residual functional capacity:

> [she could] perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except the claimant is limited to performing simple tasks, and is frequently able to interact with co-workers/supervisors. The [ALJ] also determines the claimant is unable to climb ladders/ropes/scaffolds, and occasionally able to climb ramps/stairs, balance, stoop, kneel, crouch, or crawl. The [ALJ] further concludes the claimant should not be exposed to unprotected heights/moving mechanical parts, and should avoid concentrated exposure to temperature extremes.

(Tr. 58). Based upon her residual functional capacity, Plaintiff is no longer able to perform her past relevant work as a material handler which is classified as semi-skilled and medium exertional level. (Tr. 62). However, after hearing testimony of a vocational expert, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff is capable of performing based on her age, experience, education, and capabilities. (*Id.*). For example, the ALJ determined that Plaintiff could work as a garment sorter, hand finisher, or cashier. (Tr. 62-63). Based on this determination, the ALJ found that Plaintiff has not been under a disability for purposes of the Act since October 9, 2009. (Tr. 63).

## IV.   Plaintiff's Argument for Reversal

Plaintiff makes four arguments on appeal: (1) the ALJ failed to accord proper weight to her treating physician's opinion (Pl.'s Mem. 22); (2) the ALJ did not consider all of claimant's impairments (Pl.'s Mem. 30); (3) the Appeals Council improperly refused to consider new evidence (Pl.'s Mem. 33); and (4) the decision was not based on substantial evidence because the ALJ's hypothetical was incomplete. (Pl.'s Mem. 36).

## V.   Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838

(11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See Id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## VI. Discussion

After careful review, the court concludes that the ALJ's findings are supported by substantial evidence and her decision is due to be affirmed.

### A. The ALJ Accorded Proper Weight to the Treating Physician's Opinion

As the Eleventh Circuit has instructed, "the testimony of a treating physician must be given substantial or considerable weigh unless 'good cause' is shown to the contrary." *Crawford*, 383 F.3d at 1159 (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)).

Good cause exists "when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004). The treating physician's opinion may be properly discounted "when it is not accompanied by objective medical evidence or is wholly conclusory." *Crawford*, 363 F.3d at 1159. In order to properly discredit the treating physician's opinion, the ALJ must "clearly articulate [her] reasons" for doing so. *Phillips*, 357 F.3d at 1240.

In the present case, Plaintiff argues the ALJ erred in discrediting Dr. Towles-Moore's Physical Capacities Form that stated Plaintiff would need to "lie down, sleep, or elevate her legs three hours in an eight-hour day." (Pl.'s Mem. 23). Dr. Towles-Moore also believed that Plaintiff's condition would last more than twelve months and that she was not sure whether the condition existed back to the alleged onset date in 2009. (Tr. 688). The ALJ properly stated her reasons for discrediting the treating physician's in her opinion as she stated she was assigning little weight to her opinions, "since they are inconsistent with the majority of the medical evidence and with the medical records from Quality of Life, which indicated the claimant was able to function." (Tr. 60).

The ALJ clearly articulated her reasons for discrediting the treating physician's testimony, and had good cause for doing so. Plaintiff's visits with Dr. Towles-Moore in 2012 and 2013 are inconsistent with the doctor's opinion as they do not indicate such extreme limitations on Plaintiff's functional capacities. (Tr. 498-510). She reported moderate pain with motion in her spine and no deformity, swelling and a full range of motion in her hip on August 24, 2012. (Tr. 501). In June 2013, she presented with complaints of a migraine, but reported her pain as a zero out of ten on the pain scale. (Tr. 505). On September 19, 2013, she visited Dr.

Towles-Moore complaining of a headache and seeking a medication refill. (Tr. 507). She had a normal range of motion, normal muscle strength, and stability in all extremities with no pain on inspection. (Tr. 509). Both Dr. Towles-Moore's own records and Plaintiff's medical records from other physicians are inconsistent with the extreme limitations set forth in the Physical Capacities Form from 2014. (Tr. 367-68, 486-89, 494-97, 578-88, 614-17, 635-44, 653, 670-86). Therefore, the ALJ's determination that Dr. Towles-Moore's opinion was inconsistent with the medical record is supported by substantial evidence. When a treating physician's opinion is inconsistent with her own medical records and by other medical evidence, that constitutes good cause for an ALJ to discredit that treating physician's opinion. *Phillips*, 357 F.3d at 1240.

  **B.**  **The ALJ Properly Considered All of Plaintiff's Impairments**

  The burden is on the plaintiff to prove that she has a severe impairment. *Bowen v. Yuckart*, 482 U.S. 137, 146 n.5 (1987). A severe impairment is one that "significantly limits [a person's] physical or mental ability to do basic work activities" without taking that person's age, education, or work experience into consideration. 20 C.F.R. § 404.1520(c) (2016). A severe impairment must be proven by medical evidence. 20 C.F.R. § 404.1508 (2016). Of course, it is only necessary to find a single severe impairment for a claimant's case to proceed past the second step of the analysis. *Burgin v. Comm'r Soc. Sec.*, 420 F. Appx. 901, 902 (11th Cir. 2011).

  Plaintiff contends that the ALJ erred by not finding Plaintiff's migraines to be a severe impairment. (Pl.'s Mem. 30-33). But that argument is flawed. The ALJ considered Plaintiff's headaches in general to be a severe impairment, and this encompasses her migraines. (Tr. 55). Of course, even if the ALJ did err in not considering Plaintiff's migraines (in particular) a separate severe impairment, that error would be harmless. The ALJ need only find a claimant to

have one severe impairment to progress past the second step in the multi-step analysis. *Burgin*, 420 F. Appx. at 902. Here, the ALJ found that Plaintiff had five severe impairments. (*Id.*). Thus, the ALJ proceeded past the second step of the analysis and considered whether, based upon all the medical evidence, the migraines were themselves a severe impairment. As the ALJ correctly noted, once the analysis moves past Step Two, an ALJ is required to consider "the claimant's entire medical condition, including impairments the ALJ determined were not severe." *Burgin*, 420 F. Appx. at 902. Because of this, the ALJ was required to consider Plaintiff's migraines in her analysis even though she did not specifically find them to be a severe impairment, there was no reversible error. The record indicates she did so.

    **C.    The Appeals Council Properly Considered and Discounted the New Evidence Plaintiff Submitted.**

The claimant is generally allowed to introduce new evidence at each stage of the process and the Appeals Council must consider the evidence if it is new, material, and chronologically relevant. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1261 (11th. Cir. 2007). Evidence is material under this standard if "there is a reasonable possibility that the new evidence would change the administrative outcome." *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987). In order to be chronologically relevant, the new evidence must "relate to the period on or before the date of the [ALJ] hearing decision." 20 C.F.R. § 404.970(b) (2016). Evidence is not chronologically irrelevant solely because it is dated after the ALJ decision if it still relates back to the relevant period of time. *See Washington v. SSA*, 806 F.3d 1317, 1322 (11th Cir. 2015) (holding that treating physician's opinion give after ALJ decision was still chronologically relevant because Plaintiff told the doctor he had experienced hallucinations before and the doctor examined medical records from the relevant period). When the claimant presents new evidence,

the Appeals Council must grant review when the ALJ's decision is against the weight of the current record. *Harrison v. Comm'r of Soc. Sec.*, 569 F.Appx. 874, 881 (11th Cir. 2014).

Plaintiff argues that the Appeals Council erred in refusing to review new evidence submitted to them from Dr. Bogdanova of Neurological Specialists. (Pl.'s Mem. 33). The evidence at issue is the record from Plaintiff's visit to Dr. Bogdanova on October 14, 2014 in which Plaintiff complained of a worsening headache for the past two weeks and was also concerned that her cyst had increased to 5 cm. (Tr. 37-39). Plaintiff also claimed she had uncontrolled depression. (*Id.*). Obviously, this evidence is from a period after the ALJ decision of May 2, 2014, so the Appeals Council was only required to consider the evidence if it was new, material, and chronologically relevant. *Ingram*, 496 F.3d at 1261.

Plaintiff argues that this evidence, just like that in the *Washington* case, is chronologically relevant despite the fact that it is dated after the ALJ's decision. (Pl.'s Mem. 33-36). However, *Washington* is distinguishable from Plaintiff's situation here because, there, the evidence related back to a relevant time period. *Washington*, 806 F.3d at 1322 (noting that a doctor relied on medical records and the plaintiff's complaints from the relevant time to make his determination that the condition was the same before the date of decision). In Plaintiff's case, there is no indication that Dr. Bogdanova relied on medical records from the relevant period of time. In fact, he actually relied on a new CT scan that indicated her cyst had increased in size. (Tr. 37-39). Thus, there is simply no indication that Plaintiff's condition was the same before the date of the ALJ's decision.

In addition, even if the evidence were chronologically relevant, it is not material as there is not a reasonable possibility that it would change the administrative outcome. *Hyde*, 823 F.2d at 459. The medical record from the October 2014 visit almost precisely mirrors Plaintiff's visits

to Dr. Bogdanova in August 2013 and January 2014, dates which are within the relevant time period. (Tr. 37-39, 683-87, 689). During all three visits, she complained of frequent headaches and of depression symptoms. (*Id.*). She was prescribed Lyrica in January and Dr. Bogdanova continued her on this prescription along with a Medrol dose pack in October. (Tr. 689). Other than the 1 cm increase in the size of the cyst, there is no appreciable difference in Plaintiff's condition at her October 2014 visit with Dr. Bogdanova, and her previous two visits that were considered as part of the Appeals Council decision. (Tr. 37-39, 683-87, 689). Further, although Plaintiff contends that the Appeals Council failed to consider the new evidence, that is simply not the case. (Pl.'s Mem. 33). The Appeals Council considered the evidence in its decision, but concluded that the evidence was irrelevant because it was "about a later time." (Tr. 31). That determination was not in error.

      **D.**    **The ALJ's Decision is Supported by Substantial Evidence Because the Hypothetical Posed to the Vocational Expert Included All of Plaintiff's Functional Limitations**

In order for a vocational expert's testimony to qualify as substantial evidence, the ALJ "must pose a hypothetical question which comprises all of the claimant's impairments." *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999). However, this does not mean that the ALJ must include every diagnosis and impairment in the hypothetical, so long as the functional limitations that are a result of a claimant's impairments are included. *See id.*; *Phillips*, 357 F.2d at 1240.

Plaintiff argues that the hypothetical the ALJ posed to the vocational expert was inaccurate because it did not include Plaintiff's severe headaches, and, therefore, the ALJ decision was not based on substantial evidence. (Pl.'s Mem. 36). However, the ALJ included all of the functional limitations in the hypothetical based on Plaintiff's residual functional capacity, and that is all she was required to do by law. (Tr. 24-25, 58). She did not include the functional limitations set forth in Dr. Towles-Moore's Physical Capacities Form because the ALJ properly

14

discredited that opinion. *See infra*, 9-11; (Tr. 60). Nor was she required to include Plaintiff's headaches because there is no evidence in Plaintiff's medical record that her headaches, outside of her subjective hearing testimony, substantially limited her. (Tr. 4-22, 59).[2] The ALJ's hypothetical included all of Plaintiff's functional limitations that were supported by the record evidence, and the hypothetical was accurate; therefore, the ALJ's decision is based on substantial evidence. *Jones*, 190 F.3d at 1229.

## VII. Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and the proper legal standards were applied in reaching this determination. The Commissioner's final decision is therefore due to be affirmed. A separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this August 24, 2016.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

---

[2] Plaintiff stated in her Brief in Support of Disability that newly admitted evidence reaffirms her credibility and this should have been included in the hypothetical to the vocational expert. (Pl.'s Mem. 38). However, Plaintiff did not raise this argument on appeal and she has therefore, waived the issue. *See Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004).